Edward C. Greenberg, Esq. (ECG 5553)
Tamara L. Lannin, Esq. (TL 3784)
EDWARD C. GREENBERG, LLC
570 Lexington Ave., 19th Floor
New York, NY 10022
Tel: (212) 697-8777
Fax: (212) 697-2528
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ARMEN DJERRAHIAN,

JUDGE OETKEN          Plaintiff,

- against -

WILLIAM LEONARD ROBERTS, II, p/k/a RICK
ROSS and RICKY ROZAY; MAYBACH MUSIC
GROUP; DEF JAM RECORDINGS a UNIVERSAL
MUSIC GROUP INC. Company; ISLAND
RECORDS, a UNIVERSAL MUSIC GROUP, INC.
Company; ATLANTIC RECORDING
CORPORATION, a WARNER MUSIC GROUP
Company; RICHARD MORALES, JR. p/k/a
GUNPLAY; ROBERT WILLIAMS p/k/a MEEK
MILL; TORSTEN STENZEL p/k/a DJ SCREAM;
CARLOS SUAREZ p/k/a SPIFF TV,

                                                      Defendants.
-----------------------------------------------------------------x

**14 CV 3291**

**COMPLAINT**

ECF CASE

Plaintiff, ARMEN DJERRAHIAN, by his attorneys, EDWARD C. GREENBERG, LLC,

alleges as follows:

## PARTIES

1.    At all times hereinafter mentioned, ARMEN DJERRAHIAN was, and still is, a noted

and respected professional photographer, who with respect to matters relevant herein, has done

business in the form of a sole proprietorship.

2.    Plaintiff ARMEN DJERRAHIAN (hereinafter "Plaintiff" or "DJERRAHIAN") is an

1

individual citizen of France, who is actively engaged in the photography business in the State of New York and elsewhere, and who resides in Brooklyn, New York 11222.

3. Defendant WILLIAM LEONARD ROBERTS, II  (hereinafter "ROSS") is an individual, who upon information and belief resides in Davie, Florida, and who is a world renowned musical performer who does business under the names of "Ricky Rozay", "Rick Ross", and "Rick Ro$$". That upon information and belief, ROSS works under contract for defendant DEF JAM RECORDINGS.  That ROSS is the founder, CEO, and creator of the record label MAYBACH MUSIC GROUP.

4. Defendant MAYBACH MUSIC GROUP (hereinafter "MMG") is a record label imprint, founded by ROSS, which was has been distributed by DEF JAM RECORDINGS, Warner Brothers Records, and ATLANTIC RECORDING CORPORATION.  Upon information and belief, MMG is based in the Miami suburb of Davie, Florida.  Upon information and belief, MMG is an unincorporated business entity.

5. Defendant DEF JAM RECORDINGS (hereinafter "DEF JAM"), is upon information and belief a Delaware Corporation, that regularly conducts business and has an office in the State, City and County of New York, with an office at 150 Fifth Ave., New York, NY  10011, and which is a subsidiary of Universal Music Group Inc.  That upon information and belief DEF JAM RECORDINGS was formerly part of the Universal Music Group Inc. subsidiary Island Def Jam Music Group.

6. Defendant ISLAND RECORDS (hereinafter "ISLAND"), is upon information and belief a Delaware Corporation, that regularly conducts business and has an office in the State, City and County of New York, with an office at 150 Fifth Ave., New York, NY  10011, and which is a subsidiary of Universal Music Group Inc.  That upon information and belief ISLAND RECORDS was formerly part of the Universal Music Group Inc. subsidiary Island Def Jam Music Group.

7.   That upon information and belief, Universal Music Group Inc. previously had an affiliate and/or subsidiary group entitled "Island Def Jam Music Group", which was comprised of both ISLAND RECORDS and DEF JAM RECORDINGS.  That upon information and belief, in April 2014, Universal Music Group, Inc. announced that it would be breaking up the "Island Def Jam Music Group Inc." such that ISLAND RECORDS and DEF JAM RECORDINGS could be two separate entities. Defendants DEF JAM. and ISLAND (hereinafter "ISLAND DEF JAM") appear to be inextricably intertwined to make it difficult to determine when one is acting as DEF JAM or ISLAND such that for the purposes of this Complaint, they will both be referred to as "ISLAND DEF JAM.

8.   Defendant ATLANTIC RECORDING CORPORATION, is upon information and belief a Delaware Corporation, that regularly does business and has an office in the State, City and County of New York,  with an office at 75 Rockefeller Plaza, 31st Fl., New York, NY  10019, and which is a subsidiary of Warner Music Group.

9.   Defendant RICHARD MORALES, JR.  (hereinafter "GUNPLAY") is an individual, who upon information and belief resides in Miami, Florida, and who is a performer who does business under the name of "Gunplay".  That upon information and belief GUNPLAY works under contract for defendant DEF JAM, which serves as his agent.

10.  Defendant ROBERT WILLIAMS (hereinafter "MEEK MILL") is an individual, who upon information and belief resides Philadelphia, Pennsylvania, and who is a performer who does business under the name of "Meek Mill".  That, upon information and belief, Meek Mill works under contract for ATLANTIC, which serves as his agent.

11.  Defendant TORSTEN STENZEL (hereinafter "DJ SCREAM") is an individual, who upon information and belief resides Atlanta, Georgia and who is a performer who does business under the name of DJ SCREAM.

12.  CARLOS SUAREZ (hereinafter "SPIFF") is an individual, who upon information and belief resides in the City and State of New York, and who is an artist who does business under the name of SPIFF TV.  Upon information and belief, SPIFF is a member of and/or works for MMG and/or ROSS.

13.  All individual defendants regularly employ pseudonyms in connection with their music, branding of their personae and related business endeavors.

## JURISDICTION AND VENUE

14.  This is a civil action for copyright infringement.

15.  Jurisdiction is conferred upon this Court by 28 U.S.C. Section 1338.

16.  Venue in the Southern District of New York is proper pursuant to 28 U.S.C. 1400.

## FACTS COMMON TO ALL CLAIMS

17.  That Plaintiff DJERRAHIAN is a successful professional photographer with many years of experience and a considerable reputation.

18.  DJERRAHIAN is well known in the hip hop music business, as he has worked with major artists including Jay-Z, Usher, 50 Cent, Eminem, Kanye West, Rick Ross and director Spike Lee.  DJERRAHIAN's work has been featured on the covers of several issues of Vibe Magazine, and on The Wild Magazine, XXL Magazine, and numerous international publications.

19.  DJERRAHIAN has also shot and directed music videos and commercials, including a music video featuring R&B recording artist Melanie Fiona, which received a nomination for [Best] "Video of the Year" at the 2010 BET Awards.

20.  DJERRAHIAN is also a successful fashion photographer who has shot photos for Shinola, Cazal Eyewear, Nike, Fila, Reebok, Marc Ecko, and commercials for Elle Magazine, Revlon, Van Cleef & Arpels, and Piaget.

THE IMAGES

21.  On May 17, 2010, DJERRAHIAN shot images of ROSS for XXL Magazine, which were published in the July/August 2010 issue of XXL Magazine (a copy of such images are annexed hereto as Exhibit "A".  DJERRAHIAN submitted an application for the registration of such images with the United States Copyright Office on April 4, 2014 (registration pending, case # 1-1338622681).

22.  On June 27, 2012, DJERRAHIAN shot images of ROSS and other members of MAYBACH MUSIC GROUP, GUNPLAY, MEEK MILL, Omarion, Stalley, and Wale.  A portion of such images were published in the August/September 2012 issue of Vibe Magazine (said images published in Vibe Magazine are annexed hereto as **Exhibit "B"**).

23.  DJERRAHIAN granted a limited license to VIBE Magazine to use his images on the cover and in the contents of the August/September 2012 issue of Vibe Magazine, only.  No other rights were granted by plaintiff.  Vibe is not a defendant herein.

24.  DJERRAHIAN duly registered such images with the United States Copyright Office on December 25, 2013, Registration No. VA 1-899-797 (a copy of said registration is included within **Exhibit "B"** hereto).

25.  DJERRAHIAN further registered the other images shot of MMG members, ROSS, GUNPLAY, MEEK MILL, Omarion, Stalley, and Wale, which were not published in Vibe Magazine, with the United States Copyright Office, Registration No. VAu 1-160-975 (a copy of said images and the corresponding registration are annexed hereto as **Exhibit "C"**.

26. Each of the images included within Exhibits "A", "B" and "C" hereto shall hereinafter be referred to individually and collectively as applicable as the "Image(s)".

27.  MMG is a record label imprint, which was founded by the rapper and mogul ROSS.

28.  MMG is home to artists such as ROSS, Omarion, Wale, Stalley, MEEK MILL, and

GUNPLAY.

29. MMG has released at least six solo and two compilation albums, including three certified Gold albums. MMG is, upon information and belief, based in the State of Florida, but regularly does business in the State of New York.

30. ROSS has sold millions of albums and has had at least five (5) albums reach #1 on the Billboard music charts.

31. Defendants or one or more of them, have employed one or more of the Image(s) on at least tour posters, tour promotional advertisements, internet banners, advertisements, mixtape covers, promotional materials, album/cd covers, as well as on various Internet websites including MMG's website, Twitter page, Facebook page, and other websites.

32. Defendants, or one or more of them, have utilized the Images in wide spread marketing to promote MMG and its members, including but not limited to Gunplay, Ross, and Meek Mill.

33. That Plaintiff's images of MMG and its members were/are valuable to the Defendants, or one or more of them.

34. That plaintiff's Image(s) of MMG and its members creatively capture the personalities of members of MMG.

35. The images of GUNPLAY in particular are upon information and belief, the definitive images of him and have been used in numerous promotional materials for GUNPLAY and on the cover of at least five mixtapes.

36. That MMG and the Images of same are important elements of hip hop music culture. That various blogs referring to MMG feature at least one of the Image(s) created by DJERRAHIAN.

6

## THE OFFENDING USES OF THE IMAGES

### *Tour Advertisements*

37.  Defendants, or one or more of them, have utilized at least two ("2") of plaintiff's Images in various advertisements for an MMG tour (copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "D"**, hereinafter the "TOUR AD(S)").

38.  The TOUR ADS have been published in various media, including but not limited to as internet posters and image files, internet website banners, physical print posters, and in internet promotional videos.

39.  Said TOUR AD(S) includes plaintiff's photographs of MEEK MILL, and Wale (see Exhibit "B"), without plaintiff's license, authorization or consent.

40.  The TOUR AD(S) employs two ("2") separate images of plaintiff's (see Exhibit "B" hereto), and is an unauthorized derivative work of such two ("2") of plaintiff's images.

41.  The TOUR AD(S) includes text at the top of the page which states "The Untouchable Maybach Music Empire Presents" and then below plaintiff's images of MEEK MILL, ROSS, and Wale, states "THE MMG TOUR FEATURING MEEK MILL, RICK RO$$ Wale".

42.  Different versions of the TOUR AD(S) were posted by or at the direction or control of defendants, or one or more of them, on MMG's Facebook page on its "timeline".

43.  The TOUR AD(S) was posted by or at the direction or control of defendants, or one or more of them, on MMG's Facebook page as one of its "Profile Pictures".

44.  The TOUR AD(S) were posted by or at the direction or control of defendants, or one or more of them, on DJ Scream's Facebook and Twitter pages, including in his Facebook Timeline.

45.  That, upon information and belief, DJ Scream is the "official DJ" of MMG.

46.  One version of the TOUR ADS includes the website and twitter handle for ROSS, to

wit, www.rozayraw.com, and @rickyrozay.  Said version of the TOUR ADS further includes logos for the following: MMG, Def Jam Recordings, Warner Brothers, DatPiff, Ciroc, and others.

47.  Upon information and belief, one or more versions of the TOUR AD(S) were distributed by defendants, or one or more of them, to third parties to be displayed by same.

48.  The TOUR AD(S) were published, displayed, and disseminated, by or at the direction or control of defendants, or one or more of them, on MMG's YouTube page in several different videos promoting the MMG tour and the purchase of tickets through LiveNation.com.

49.  That the YouTube videos promoting the MMG tour also include another of Plaintiff's Images of Wale, ROSS, and MEEK MILL (a copy of said image is annexed hereto as **Exhibit "E"**, hereinafter the "SECOND TOUR AD").

50.  The SECOND TOUR AD has been published, displayed, and disseminated, by or at the direction or control of defendants, or one or more of them, on MMG's YouTube page in several different videos promoting the MMG tour and the purchase of tickets through LiveNation.com.

51.  Upon information and belief, both the TOUR AD(S) and the SECOND TOUR AD were distributed by or at the direction or control of defendants, or one or more of them, to third parties to display, distribute, and/or disseminate, so as to maximize the publicity for the tour.

*2013 Takeover*

52.  Defendants, or one or more of them, have utilized at least twelve ("12") of plaintiff's Images in various advertisements for MMG's mixtape entitled "Takeover" (copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "F"**, hereinafter the "TAKOVER AD(S)").

53.  The TAKEOVER ADS have been published in various media, including but not limited to as internet posters and image files, physical print posters, mixtape cover(s) and in

internet videos.

54.  Said TAKEOVER AD(S) includes plaintiff's photographs of Omarion, MEEK MILL, ROSS, Staley, Wale and Gunplay (see Exhibit "C", specifically "Staley_021", "Omarion_001", "Meek Mil_038", "Rick_033", "Wale_016", "Gunplay_018", "Omarion_212", "Meek Mil_278", "Rick_081", "Stalley_086", "Wale_026", and "Gunplay_108"), without plaintiff's license, authorization or consent.

55.  The TAKEOVER AD(S) employ twelve ("12") separate images of plaintiff's, and is an unauthorized derivative work of such twelve ("12") of plaintiff's images.

56.  At the bottom of at least one of the versions of the TAKEOVER AD(S) states a credit in print to each of the following: MAYBACH MUSIC GROUP, RICK ROSS, MEEK MILL, WALE, OMARION, STALLEY, GUNPLAY, DEF JAM RECORDINGS, and ATLANTIC RECORDS, among others.

57.  That at the bottom of at least one of the versions of the TAKEOVER AD(S) includes the logos for ATLANTIC, MMG and DEF JAM RECORDINGS.

58.  Different versions of the TAKEOVER AD(S) were posted by or at the direction or control of defendants, or one or more of them, on MMG's Instagram and Facebook pages.

59.  Different versions of the TAKEOVER AD(S) were posted by or at the direction or control of defendants, or one or more of them, on MMG's Twitter account.

60.  The TAKEOVER AD(S), as published in a video as displayed on MMG's Facebook Page, by, or at the direction or control of defendants, or one or more of them, with a link to MMG's page at soundcloud.com.

61.  The TAKEOVER AD(S), were published by, or at the direction or control of defendants, or one or more of them on ROSS' website www.rozayraw.com.

62.  Upon information and belief, one or more versions of the TAKEOVER AD(S) were

distributed by defendants, or one or more of them, to third parties to be displayed by same.

63.  The TAKEOVER AD(S) have been used by defendants, or one or more of them, as cover for several mixtape songs, including but not limited to "Ball Freestyle (ft. Gunplay)", "Ball Freestyle", "Ball", "Ball (Remix) Ft. Gunplay", "Ball (Remix)".

### *Gunplay Acquitted*

64.  Defendants, or one or more of them, have utilized one ("1") of plaintiff's Images of GUNPLAY in various advertisements for GUNPLAY'S mixtape entitled "Acquitted"(copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "G"**, hereinafter the "ACQUITTED AD(S)").

65.  The ACQUITTED ADS have been published in various media, including but not limited to as internet posters and image files, internet background image, mixtape cover and mixtape backside.

66.  Said ACQUITTED AD(S) includes plaintiff's photograph of GUNPLAY (see Exhibit "C", specifically "Gunplay_108"), without plaintiff's license, authorization or consent.

67.  The ACQUITTED AD(S) employ plaintiff's image of GUNPLAY edited and "photoshopped" in such a manner as to create an unauthorized derivative work of plaintiff's Image.

68.  In the foreground of the ACQUITTED ADS are several microphones, on which are the logos for MMG, and ISLAND DEF JAM, among others.

69.  The backside to the Mixtape (an ACQUITTED AD) includes plaintiff's Image, and logos for MMG, and ISLAND DEF JAM, among others.

70.  The backside to the Mixtape (an ACQUITTED AD) further includes a credit for the "artwork" to "Kideight.com".

71.  The ACQUITTED AD was published by, or under the direction or control of GUNPLAY on his Facebook page as the "Cover Photo".

72.  Different versions of the ACQUITTED  AD(S) were published by, or under the direction or control of GUNPLAY on his Facebook page in his timeline.

73.  Upon information and belief, the ACQUITTED  ADS were published by, or under the direction or control of GUNPLAY and/or ROSS on the Twitter page for "gunplaymmg".

74.  The Twitter page for "gunplaymmg" lists ROSS' website www.rozayraw.com instead of Gunplay's website of www.gunplayallday.com.

75.  Upon information and belief, one or more versions of the ACQUITTED AD(S) were distributed by defendants, or one or more of them, to third parties to be displayed by same.

76.  That Gunplay's mixtape "Acquitted" has been reported by an authoritative music magazine, Spin Magazine, as one of the "40 Best Hip-Hop Albums of 2013".

### *Group Photo Adolf Sniffler*

77.  Defendants, or one or more of them, have utilized one ("1") of plaintiff's Images of a group photo of MMG members Wale, MEEK MILL, ROSS, Stalley, Omarion and GUNPLAY at least at the top of the twitter page for @gunplaymmg (a copy of such offending use is annexed hereto as **Exhibit "H"**, hereinafter the "GROUP PHOTO").

78.  Plaintiff created the GROUP PHOTO (see Exhibit "C", specifically "MMG09").

79.  Upon information and belief, the GROUP PHOTO was published by, or under the direction or control of GUNPLAY and/or ROSS on the Twitter page for "gunplaymmg".

80.  Upon information and belief, the GROUP PHOTO has been distributed by defendants, or one or more of them, to third parties to be displayed by same.

### *Gunplay Sunshine State of Mind*

81.  Defendants, or one or more of them, have utilized one ("1") of plaintiff's Images of GUNPLAY in various advertisements for GUNPLAY'S mixtape entitled "Gunshine State of Mind"(copies of a sampling of such various advertisements, as described hereinbelow, are annexed

hereto as **Exhibit "I"**, hereinafter the "GUNSHINE AD(S)").

82. The GUNSHINE ADS have been published in various media, including but not limited to as internet posters, image files, and as a mixtape cover.

83. Said GUNSHINE AD(S) includes plaintiff's photograph of GUNPLAY (see Exhibit "B"), without plaintiff's license, authorization or consent.

84. The GUNSHINE AD(S) employ plaintiff's image of GUNPLAY edited and "photoshopped" in such a manner as to create an unauthorized derivative work of plaintiff's Image.

85. The color of the jacket worn by GUNPLAY in the GUNSHINE AD(S) has been color edited from the original version (compare Exhibit "I" with "B").

86. The background of Plaintiff's Image of GUNPLAY in the GUNSHINE AD(S) has been modified to include the image of the front of a car and the entrance to a theatre.

87. Upon information and belief, the GUNSHINE AD(S) were published by, or under the direction or control of GUNPLAY.

88. Upon information and belief, one or more versions of the GUNPLAY AD(S) were distributed by defendants, or one or more of them, to third parties to be displayed by same.

### *Gunplay Coast 2 Coast*

89. Defendants, or one or more of them, have utilized one ("1") of plaintiff's Images of GUNPLAY in various advertisements for GUNPLAY'S mixtape entitled "Coast 2 Coast Volume 247"(copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "J"**, hereinafter the "COAST 2 COAST AD(S)").

90. The COAST 2 COAST ADS have been published in various media, including but not limited to as internet posters, image files, and as a mixtape cover.

91. Said COAST 2 COAST AD(S) includes plaintiff's photograph of GUNPLAY (see Exhibit "C", specifically "Gunplay_108"), without plaintiff's license, authorization or consent.

92.  The COAST 2 COAST AD(S) employ plaintiff's image of GUNPLAY edited and "photoshopped" in such a manner as to create an unauthorized derivative work of plaintiff's Image.

93.  The foreground of Plaintiff's Image of GUNPLAY in the COAST 2 COAST AD(S) has been modified to include $100 dollar bills and the pouring of what looks like a white substance.

94.  Upon information and belief, the COAST 2 COAST AD(S) were published by, or under the direction or control of GUNPLAY.

95.   Upon information and belief, one or more versions of the COAST 2 COAST AD(S) were distributed by defendants, or one or more of them, to third parties to be displayed by same.

*__Gunplay Photoshopped with MMG in Background__*

96.  Upon information and belief, defendants, or one or more of them, have employed an edited version of one ("1") of plaintiff's Images of GUNPLAY (a copy of such an edited version with part of the MMG logo edited into the background is annexed hereto as **Exhibit "K"**, hereinafter the "LOGO AD").

97.  The LOGO AD is an unauthorized derivative work of Plaintiff's Image of Gunplay (Exhibit "C", specifically "GunPlay_108").

98.  Upon information and belief, the LOGO AD was published by, or under the direction or control of GUNPLAY.

99.  Upon information and belief, the LOGO AD has been distributed by defendants, or one or more of them, to third parties to be displayed by same.

*__Plaintiff's Unedited Image of Gunplay__*

100.         Upon information and belief, GUNPLAY, ROSS, and/or persons on either of their behalf, direction or control, have distributed and/or published Plaintiff's Image of Gunplay (see Exhibit "B").

101.	Upon information and belief, DEF JAM published said image of GUNPLAY (see Exhibit "B") on the DEF JAM website, www.defjam.com, as the primary image for GUNPLAY (a copies of such offending use(s) are annexed hereto as **Exhibit "L"**).

### *Gunplay Unscripted Freestyles*

102.	Defendants, or one or more of them, have utilized one ("1") of plaintiff's Images of GUNPLAY in various advertisements for GUNPLAY'S mixtape entitled "Unscripted Freestyles"(copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "M"**, hereinafter the "UNSCRIPTED AD(S)").

103.	The UNSCRIPTED ADS have been published in various media, including but not limited to as internet posters, image files, and as a mixtape cover.

104.	Said UNSCRIPTED AD includes plaintiff's photograph of GUNPLAY (see Exhibit "B"), without plaintiff's license, authorization or consent.

105.	The UNSCRIPTED AD employs plaintiff's image of GUNPLAY edited and "photoshopped" in such a manner as to create an unauthorized derivative work of plaintiff's Image.

106.	The color of Plaintiff's Image of GUNPLAY in the UNSCRIPTED AD has been modified to appear grainy and the color has been modified to include red.

107.	Upon information and belief, the UNSCRIPTED AD was published by, or under the direction or control of GUNPLAY, ROSS, and/or MMG.

108.	At the bottom of the UNSCRIPTED AD is the MMG logo.

109.	Upon information and belief, one or more versions of the UNSCRIPTED AD have been distributed by defendants, or one or more of them, to third parties to be displayed by same.

***Gunplay Living Legends***

110.        Defendants, or one or more of them, have utilized one ("1") of plaintiff's Images of GUNPLAY in various advertisements for GUNPLAY'S mixtape entitled "Living Legends"(copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "N"**, hereinafter the "LIVING LEGENDS AD(S)").

111.        The LIVING LEGENDS ADS have been published in various media, including but not limited to as internet posters and image files.

112.        Said LIVING LEGENDS AD(S) includes plaintiff's photograph of GUNPLAY (see Exhibit "B"), without plaintiff's license, authorization or consent.

113.        Each of the versions of the LIVING LEGENDS ADS employ plaintiff's image of GUNPLAY edited and "photoshopped" in such a manner as to create an unauthorized derivative work of plaintiff's Image.

114.    One of the versions of the LIVING LEGENDS AD has been altered with a city skyline included in the background and a red and black banner displayed in the lower foreground with the words "2014 GUNPLAY".

115.    Another version of the LIVING LEGENDS AD has been altered with a city skyline included in the background and a red and black banner displayed in the lower foreground with the words "2014 GUNPLAY 'Living Legends' Coming Soon".

116.    A third version of the LIVING LEGENDS AD has been altered with the Gunplay logo appearing across GUNPLAY's chest, and words in the lower foreground stating "Living Legend *** Coming Soon ***"

117.    Upon information and belief, the LIVING LEGENDS AD(s) have been published by, or under the direction or control of GUNPLAY, ROSS, and/or MMG.

118.    Upon information and belief, one or more versions of the LIVING LEGENDS

AD(s) have been distributed by defendants, or one or more of them, to third parties to be displayed by same.

119. The LIVING LEGENDS AD(S) has been published by or at the direction or control of defendants, or one or more of them, on MMG's Twitter page.

120. The LIVING LEGENDS AD(S) has been published by or at the direction or control of defendants, or one or more of them, on GUNPLAY'S Twitter page as his primary image.

121. The LIVING LEGENDS AD(S) has been published by or at the direction or control of defendants, or one or more of them, on MMG's Facebook page on its "timeline".

122. The LIVING LEGENDS AD(S) has been published by or at the direction or control of defendants, or one or more of them, on GUNPLAY'S Facebook page on its "timeline".

123. The LIVING LEGENDS AD(S) has been published by or at the direction or control of defendants, or one or more of them, on GUNPLAY'S Facebook page as his "Cover Photo".

124. At least one version of the LIVING LEGENDS AD has been published to GUNPLAY'S website, www.gunpalyallday.com, which includes both the ISLAND DEF JAM and MMG logos below the LIVING LEGENDS AD.

125. Upon information and belief, the LIVING LEGENDS AD(S) were published by, or under the direction or control of GUNPLAY, ROSS, and/or MMG.

126. Upon information and belief, the LIVING LEGENDS AD(S) have been distributed by defendants, or one or more of them, to third parties to be displayed by same.

### *Miscellaneous Gunplay promotions*

127. At least two of plaintiff's Images of GUNPLAY (Exhibit "B", and Exhibit "C", specifically "GunPlay_108") have been used in various promotional publications for various events featuring GUNPLAY (hereinafter the "VARIOUS PROMOTIONS", copies of a sampling of such VARIOUS PROMOTIONS as described hereinbelow are annexed hereto as **Exhibit "O"**).

128.    Each of said VARIOUS PROMOTIONS constitutes a separate act of infringement and is a separate unauthorized derivative work of Plaintiff's Images of Gunplay.

129.    Upon information and belief, the VARIOUS PROMOTIONS were published by, or under the direction or control of GUNPLAY.

130.    That many of the VARIOUS PROMOTIONS have been published on the twitter page for @gunplaymmg by the @gunplaymmg account.

131.    That, upon information and belief, publications to the @gunplaymmg account are made by GUNPLAY and/or ROSS and/or persons under the direction or control of GUNPLAY and/or ROSS.

132.    That upon information and belief, defendants or one or  more of them, employed Plaintiff's Image of GUNPLAY to promote the GUNPLAY "Acquitted World Tour".

133.    Upon information and belief, the VARIOUS PROMOTIONS have been distributed by defendants, or one or more of them, or by persons under the direction or control of one or more of them, to third parties to be displayed by same.

### *Meek Mill Superbowl*

134.    At least one of plaintiff's Images of MEEK MILL (Exhibit "B") has been used in at least one promotional publication for an event featuring MEEK MILL (hereinafter the "SUPERBOWL EVENT AD", a copy of which is annexed hereto as **Exhibit "P"**).

135.    Plaintiff's Image of MEEK MILL as employed in the SUPERBOWL EVENT AD is an unauthorized derivative work of Plaintiff's Image.

136.             Upon information and belief, the SUPERBOWL EVENT AD was published by, or under the direction or control of MEEK MILL, ROSS, and/or MMG.

137.    At the bottom of the SUPERBOEL EVENT AD is the MMG logo.

138.    Upon information and belief, the SUPERBOEL EVENT AD has been distributed

by defendants, or one or more of them, or by persons under the direction or control of one or more of them, to third parties to be displayed by same.

***Meek Mill Promotional Event***

139.    At least one of plaintiff's Images of MEEK MILL (Exhibit "B") has been used in at least one promotional publication for an event featuring MEEK MILL (hereinafter the "FIRESTONE EVENT AD", a copy of which is annexed hereto as **Exhibit "Q"**).

140.    The FIRESTONE EVENT AD is an unauthorized derivative work of Plaintiff's Image of MEEK MILL.

141.             Upon information and belief, the FIRESTONE EVENT AD was published by, or under the direction or control of MEEK MILL, ROSS, and/or MMG.

142.    That, upon information and belief, MEEK MILL or someone on his behalf or under his direction or control published the FIRESTONE EVENT AD to his Twitter account, which is @MeekMill.

143.    At the bottom of the FIRESTONE EVENT AD is the MMG logo.

144.    Upon information and belief, the FIRESTONE EVENT AD has been distributed by MEEK MILL, MMG, and persons on behalf of and under the direction or control of one or more of them, to third parties to be displayed by same.

***Meek Mill 2014***

145.    Defendants, or one or more of them, have utilized one ("1") of plaintiff's Images of MEEK MILL in at least one version of an advertisement for MEEK MILL'S mixtape entitled "Dreams Worth More Than Money"(copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "R"**, hereinafter the "DREAMS AD").

146.    The DREAMS AD has been published at least on the World Wide Web.

147.    Said DREAMS AD includes plaintiff's photograph of MEEK MILL (see Exhibit

18

"B"), without plaintiff's license, authorization or consent.

148.    The DREAMS AD employs plaintiff's Image of MEEK MILL edited and "photoshopped" in such a manner as to create an unauthorized derivative work of plaintiff's Image.

149.    Plaintiff's Image of MEEK MILL as displayed in the DREAMS AD has been altered with a city skyline included in the background and a red and black banner displayed in the lower foreground with the words "2014 MEEK MILL 'DREAMS WORTH MORE THANMONEY' COMING SOON' ".

150.    Upon information and belief, the DREAMS AD has been published by, or under the direction or control of MEEK MILL, ROSS, and/or MMG.

151.    Upon information and belief, the DREAMS AD has been distributed by defendants, or one or more of them, to third parties to be displayed by same.

152.    Upon information and belief, the DREAMS AD has been published by or at the direction or control of defendants, or one or more of them, on ROSS' Twitter page.

### *Rick Ross Gun Pic 911*

153.    Defendants, or one or more of them, have, upon information and belief, utilized plaintiff's Image of ROSS, which depicts ROSS holding his fingers to his head in the style of a gun (Exhibit "A" hereto) in various advertisements for ROSS and his music (copies of a sampling of such various advertisements, as described hereinbelow, are annexed hereto as **Exhibit "S"**, hereinafter the "GUN PHOTO USE(S)").

154.    The GUN PHOTO USE(S) have been published in various media, including but not limited to as internet posters and image files, and in internet videos.

155.    Said GUN PHOTO USE(S) includes plaintiff's photographs of ROSS (Exhibit "A") without plaintiff's license, authorization or consent.

156.    Each version of the GUN PHOTO USE(S) is an unauthorized derivative work of

plaintiff's Image.

157.    Various versions of the GUN PHOTO USE(S) have been cropped, without plaintiff's license, authorization or consent.

158.    At least one version of the GUN PHOTO USE(S) has been edited to include the text of "911" in bold black numbers across plaintiff's Image of ROSS.

159.    At least one version of the GUN PHOTO USE(S) has been edited to appear alongside a photograph of MEEK MILL, and with text in red, white and black letters stating, "RICK ROSS + MEEK MILL TheMansionElan Saturday Sept. 28th #BreakingNews".

160.    That the aforementioned modifications of the GUN PHOTO USE(S) were without plaintiff's license, authorization or consent.

161.    Upon information and belief, at least one version of the GUN PHOTO USE(S) was published to ROSS' Instagram page, by, on behalf of, or under the direction of control of ROSS.

162.    Upon information and belief, at least one version of the GUN PHOTO USE(S) was published to ROSS' SoundCloud page, by, on behalf of, or under the direction of control of ROSS.

163.    Upon information and belief, ROSS, and/or persons on his behalf or under his direction or control have employed the GUN PHOTO USE(S) to publicize ROSS' song, entitled "911".

164.    Upon information and belief, ROSS, and/or persons on his behalf or under his direction or control have employed the GUN PHOTO USE(S) to publicize ROSS' song, entitled "Birthday Cake (Remix)".

165.    Upon information and belief, ROSS, and/or persons on his behalf or under his direction or control have employed the GUN PHOTO USE(S) to publicize ROSS' song, entitled "How Many Drinks (Remix)".

166.    Upon information and belief, ROSS, and/or persons on his behalf or under his

direction or control have employed the GUN PHOTO USE(S) to publicize ROSS' song, entitled "Cut Her Off (Remix)".

167.    At least one version of the GUN PHOTO USE(S) was published to the Twitter account of MEEK MILL, which is @meekmill, by, on behalf of, or under the direction of control of ROSS, MEEK MILL, or one or more of them.

168.    At least one version of the GUN PHOTO USE(S) was published to DJ SCREAM'S website, which is www.djscreamtv.com, by, on behalf of, or under the direction of control of ROSS, DJ SCREAM, or one or more of them.

169.    Upon information and belief, one or more versions of the GUN PHOTO USE(S) were distributed by defendants, or one or more of them, to third parties to be displayed by same.

### *Miscellaneous*

170.    That none of the aforementioned uses of plaintiff's Image(s), inclusive of any unauthorized derivative works thereof, as set forth and referenced with respect to Exhibits "D" through "S" were with plaintiff's license, authorization or consent.  This is notwithstanding the fact that defendants, or one or more of them, knew that plaintiff was the photographer, had plaintiff's contact information, and indeed were in contact with plaintiff.

171.    That, upon information and belief, each of defendants, or one or more of them, do business in the State of New York.

172.    Upon information and belief, the events giving rise to this action, including the photo shoot with Vibe Magazine, occurred in the State of New York and/or out of the transaction of business within the State of New York.

173.    That the full nature and extent of the use(s) of plaintiff's image by the defendants, or one or more of them, is unknown to plaintiff pre-discovery as such is within the sole knowledge of the defendants, or one or more of them.

174.    Defendant(s) have refused to provide such information although duly demanded.

175.    Upon information and belief, defendants or one or more of them, have employed Plaintiff's Image(s) in a myriad of ways and mediums, and have made uses of Plaintiff's Image(s) in addition to what is set forth herein.

176.    That the aforementioned uses of plaintiff's Image(s) by the defendants, or one or more of them, are for branding and/or other purposes.

177.    That defendant(s)' uses of Plaintiff's Images have been for their sole economic benefit and to the economic detriment of Plaintiff.

178.    In or around October of 2012, DJERRAHIAN provided SPIFF TV with low res and non-retouched versions of his Images for MMG to review and possibly license from DJERRAHIAN.

179.    When delivering the Images to SPIFF TV by email, DJERRAHIAN specified that if MMG is interested in any of the images to let DJERRAHIAN know and to specify the requested use so that DJERRAHIAN could then consider the license and provide an estimate for the proposed terms of use, if any.

180.    Rather than informing DJERRAHIAN of the Images in which they were interested and for what manner they sought to use the Images, defendants or one or more of them, boldly and brazenly used Plaintiff's Images as aforesaid without requesting or obtaining Plaintiff's license, authorization or consent.

181.    Upon seeing the "TAKEOVER AD(S)", on January 9, 2013, DJERRAHIAN confronted SPIFF with regard to the offenses to his intellectual property.  SPIFF responded by saying "I got your brother".

182.    DJERRAHIAN also discussed the unauthorized uses of his image with MMG's vice president, Kendall "Young Sav" Freeman from in or around June of 2013 to September of 2013.

183.     On October 29, 2013, a mutual acquaintance of both DJERRAHIAN and ROSS'

and MMG's lawyer, Ms. Adeline Ferretti, Esq., introduced DJERRAHIAN to Ferretti by email (a

copy of said email is annexed hereto within **Exhibit "T"**).

184.     On October 31, 2013, DJERRAHIAN wrote to attorney Ferretti and informed her of

the various unauthorized uses of his Images (a copy of said email is annexed hereto within **Exhibit

"T"**).

185.     On November 13, 2013, having received no response from Ferretti, DJERRAHIAN

re-sent his email to her from October 31, 2013 (a copy of said email is annexed hereto within

**Exhibit "T"**).

186.     That Ms. Ferretti responded to DJERRAHIAN on November 13, 2013 and

scheduled a telephone call to discuss the issues (a copy of said email is annexed hereto within

**Exhibit "T"**).

187.     That Ms. Ferretti told DJERRAHIAN on the phone that she would discuss the

matter with MMG (a copy of said email is annexed hereto within **Exhibit "T"**).

188.     On December 4, 2013, DJERRAHIAN wrote to Ferretti to ascertain whether

Ferretti had spoken with MMG, and Ferretti never responded to DJERRAHIAN's email (a copy of

said email is annexed hereto within **Exhibit "T"**).

189.     On January 15, 2014, plaintiff, by counsel, issued and delivered correspondence to

ROSS and MMG by and through their counsel Ms. Ferretti, advising her, *inter alia*, that ROSS and

MMG were in violation of plaintiff's copyright through the use of the Image(s), that they should

immediately cease and desist all uses of the Images, and that they should provide any information

that might rebut the plaintiff's presumption that the Image(s) had been unlawfully used in violation

of Plaintiff's copyrights, and that they should disclose usage information without prejudice (a copy

of said letter, sans its exhibits is annexed hereto as **Exhibit "U"**).

190.     That no response was received to said January 15, 2014 letter until the end of March of 2014.

191.     As of the date of this Complaint, ROSS, MMG and their counsel, Ms. Ferretti, have failed to adequately respond to plaintiff's counsel's letter, and have not provided any information regarding the nature and extent of the use(s) of plaintiff's Image(s).

192.     On February 12, 2014, Plaintiff, by counsel, issued and delivered correspondence to ROSS and MMG to two separate addresses for MMG in the State of Florida, advising them, inter alia, that they were in violation of plaintiff's copyright through the use of the Image(s), that they should immediately cease and desist all uses of the Images, and that they should provide any information that might rebut the plaintiff's presumption that the Image(s) had been unlawfully used in violation of Plaintiff's copyrights.

193.     That no response was received to either of said February 12, 2014 letters to ROSS and MMG.

194.     On February 12, 2014, Plaintiff, by counsel, issued and delivered correspondence to the general counsel at ATLANTIC, advising it, inter alia, that it is in violation of plaintiff's copyright through the use of the Image(s), that they should immediately cease and desist all uses of the Images, and that they should provide any information that might rebut the plaintiff's presumption that the Image(s) had been unlawfully used in violation of Plaintiff's copyrights.

195.     On February 12, 2014, Plaintiff, by counsel, issued and delivered correspondence to the general counsel at DEF JAM, advising it, inter alia, that it is in violation of plaintiff's copyright through the use of the Image(s), that they should immediately cease and desist all uses of the Images, and that they should provide any information that might rebut the plaintiff's presumption that the Image(s) had been unlawfully used in violation of Plaintiff's copyrights.

196.     That despite plaintiff's requests, defendants have failed to provide plaintiff with the

full nature and extent of defendant(s)' use(s) of Plaintiff's Images.

   **197.**   That despite plaintiff's requests, many of the unauthorized use(s)' of plaintiff's images remain published on the World Wide Web and **have not been removed, though duly requested by plaintiff's counsel.**

   198.   That upon information and belief, defendants, or one or more of them, continue to employ plaintiff's Image.

   199.   That such post notice use is particularly egregious and willful.

   200.   Upon information and belief, each of defendants, or one or more of them, are sophisticated licensees and licensors of intellectual property and employ persons expert in all aspects of licensing, rights management and related matters.

   201.   Upon information and belief, each of defendants, or one or more of them, have extensive resources including but not limited to legal counsel, available to them to assure compliance with all appropriate business protocols and federal or state statutes including but not limited to USC Title 17.

   202.   That defendants, or one or more of them, knew or should have known of the procedures and protocols for the licensing of intellectual property created by third parties.

   203.   That despite such resources, and despite the actual notice that Plaintiff created the images, defendants, or one or more of them, employed Plaintiff's Image(s) without plaintiff's license, authorization or consent.

   204.   Upon information and belief, as of result of the aforementioned uses of Plaintiff's Image(s) by the defendants, or one or more of them, plaintiff's Image(s) have been widely distributed and made available for others to appropriate and republish with ease.  Consequently, Plaintiff's Image(s) are now published on countless web pages by third parties in violation of plaintiff's copyright.

205.   That, upon information and belief, the defendants, or one or more of them, were fully aware at all times relevant herein that it lacked a written license or permission necessary to employ the use of at least seventeen (17) of Plaintiff's Image(s) in any form.

206.   That, notwithstanding such knowledge, defendants, or one or more of them, wholly failed to obtain a license or permission from the Plaintiff.

207.   That pursuant to Federal Rule 11, Plaintiff sought to obviate litigation and resolve the matters complained of herein and made extensive efforts toward that end.

208.   That subsequent to DJERRAHIAN'S notices to MMG, ROSS, SPIFF, and subsequent to plaintiff's counsel's notices, defendants, or one or more of them, have *continued* to use Plaintiff's Image(s), without his authorization, consent, or license.

209.   That as of the date of this complaint, the parties have been unable resolve their disputes without the need for litigation, despite plaintiff's good faith attempts at same.

210.   That the defendants have no defenses at law to the claims set forth herein.

211.   Upon information and belief, each and all of the defendant(s) rely on USC Title 17 and hold copyrights for their own intellectual property.

212.   Paragraphs "1" through "210" are incorporated by reference with respect to each of the below counts or claims for relief.

**FIRST CLAIM FOR RELIEF**
Willful Copyright Infringement
Under Section 501 of the Copyright Act

213.   The use(s) of Plaintiff's Image(s) by the defendants, or one or more of them, as described hereinabove, were and are without the plaintiff's authorization, license or consent.

214.   That, upon information and belief, the defendants, or one or more of them have infringed the copyright for Plaintiff's Image(s).

215.   That, upon information and belief, the aforementioned acts of the defendants, or one

26

or more of them, constitute federal statutory copyright infringement under Section 501 of the

Copyright Act in violation of the rights granted to DJERRAHIAN as copyright holder.

216.    That the use of each image by each defendant constitutes a separate and distinct act

of infringement of Plaintiff's copyright.  That, upon information and belief, defendants, or one or

more of them, individually and/or collectively, have infringed no less than seventeen (17) of

plaintiff's copyright(s).

217.    That, upon information and belief, defendant(s)' use(s) of the subject Image were

willful, intentional and in bad faith.

218.    That, upon information and belief, defendants, or one or more of them, had actual

and/or constructive knowledge and/or through the exercise of ordinary business care and/or the

examination of public records, knew or should have known that the plaintiff held the copyright in

the Image, that neither defendants, nor one or more of them, ever had (at any of the relevant times

herein) a license, consent, or authorization by plaintiff for the use of Plaintiff's image as

complained of herein by the defendants, or one or more of them, and that any such use(s) would be

in violation of Plaintiff's copyright.

219.    That as a result of defendant(s)' acts, plaintiff has been and will continue to be

damaged in an amount as yet to be determined.  Indeed, notwithstanding, Plaintiff's counsel's

letters referenced hereinabove, the date(s) or term(s) of use(s) of  plaintiff's image are as yet

unknown, such information being within the sole custody, possession, and control of the

defendants, or one or more of them.

220.    That Plaintiff is further entitled to damages, attorneys' fees and costs under Section

504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful, intentional,

malicious and bad faith nature of defendant(s)' copyright infringement, and as an alternative to

statutory damages, Plaintiff, at her election prior to judgment is entitled to recover her actual

damages and any additional profits of the defendants, or one or more of them, attributable to the infringement as under 17 U.S.C. Sections 504 (a)-(b).

## SECOND CLAIM FOR RELIEF
### Negligent Copyright Infringement
### Under Section 501 of the Copyright Act

221.    The use(s) of Plaintiff's Image(s) by the defendants, or one or more of them, as described hereinabove, were and are without the plaintiff's authorization, license or consent.

222.    That, upon information and belief, the defendants, or one or more of them have infringed the copyright for Plaintiff's Image(s).

223.    That, upon information and belief, the aforementioned acts of the defendants, or one or more of them, constitute federal statutory copyright infringement under Section 501 of the Copyright Act in violation of the rights granted to DJERRAHIAN as copyright holder.

224.    That the use of each image by each defendant constitutes a separate and distinct act of infringement of Plaintiff's copyright.  That, upon information and belief, defendants, or one or more of them, individually and/or collectively, have infringed no less than seventeen (17) of plaintiff's copyright(s).

225.    That, upon information and belief, defendant(s)' use(s) of the Image(s) in violation of plaintiff's copyright were negligent in that defendants, or one or more of them, knew or should have known that it was without a license for the use(s) complained of herein.

226.    That, upon information and belief, defendants, or one or more of them, had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public records, knew or should have known that the plaintiff held the copyright in the Image, that neither defendants, nor one or more of them, ever had (at any of the relevant times herein) a license, consent, or authorization by plaintiff for the use of Plaintiff's image as complained of herein by the defendants, or one or more of them, and that any such use(s) would be

28

in violation of Plaintiff's copyright.

227.   That as a result of defendant(s)' acts, plaintiff has been and will continue to be damaged in an amount as yet to be determined.  Indeed, notwithstanding, Plaintiff's counsel's letters referenced hereinabove, the date(s) or term(s) of use(s) of  plaintiff's image are as yet unknown, such information being within the sole custody, possession, and control of the defendants, or one or more of them.

228.   That Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful, intentional, malicious and bad faith nature of defendant(s)' copyright infringement, and as an alternative to statutory damages, Plaintiff, at her election prior to judgment is entitled to recover her actual damages and any additional profits of the defendants, or one or more of them, attributable to the infringement as under 17 U.S.C. Sections 504 (a)-(b).

<u>**THIRD CLAIM FOR RELIEF**</u>
<u>Induced Copyright Infringement</u>
<u>Under Section 501 of the  Copyright Act</u>
<u>Against Defendants ROSS, MMG and SPIFF</u>

229.  Upon information and belief, defendants, or one or more of them, have directly infringed Plaintiff's copyright(s) by, *inter alia* employing, printing, manufacturing, editing, cropping, broadcasting, disseminating, distributing, sublicensing, and/or enabling the copying or appropriation of Plaintiff's Image(s) (or unauthorized derivative works thereof) as described more fully hereinabove, in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. Sections 106 and 501.

230.  Upon information and belief, defendants ROSS, MMG and SPIFF, or one or more of them, are liable for inducing the copyright infringement(s) of various third parties who have used plaintiff's images as described hereinabove.

231.  Defendants, ROSS, MMG and SPIFF, or one or more of them, have selected,

29

employed, broadcast, printed, manufactured, modified, altered, edited, cropped, distributed, sublicensed, provided, and/or enabled the copying or appropriation of Plaintiff's Image(s) or unauthorized derivative work(s) thereof for use in connection with, *inter alia*, materials and publications to promote MMG, its members, tour(s), and the music of MMG and its members, as specified hereinabove.

232.   As explained herein, upon information and belief, defendants, ROSS, MMG and SPIFF, or one or more of them, have actively facilitated, encouraged, and/or enticed at least GUNPLAY, MEEK MILL, DJ SCREAM, DEF JAM, ISLAND DEF JAM, ATLANTIC, Facebook, Instagram, Twitter, YouTube, KidEight, DatPiff, SoundCloud, and various blogs and websites, or one or more of them, to commit copyright infringement.

233.   As set forth hereinabove, defendants, ROSS, MMG and SPIFF, or one or more of them, upon information and belief, have induced and/or continue to induce infringement(s), willfully and/or negligently by, *inter alia:* employing, broadcasting, printing, publishing, distributing, manufacturing, or enabling the copying of plaintiff's Image(s), or unauthorized derivative work(s) thereof, thereby inducing third parties, including but not limited to GUNPLAY, MEEK MILL, DJ SCREAM, DEF JAM, ISLAND DEF JAM, ATLANTIC, Facebook, Instagram, Twitter, YouTube, KidEight, DatPiff, SoundCloud, and various blogs and websites, or one or more of them, to infringe on Plaintiff's copyright(s).

234.   That said infringements have continued post notice, with defendants, or one or more of them having received constructive and/or actual notice of Plaintiff's copyrights and the corresponding infringement(s).

235.   Upon information and belief, at all times relevant herein, defendants, or one or more of them, were on constructive and/or actual notice of Plaintiff's rights to the Image(s), and that any unauthorized use(s) thereof would be in violation of Plaintiff's copyright(s).

236. Upon information and belief, defendants, or one or more of them, relied on the use of Plaintiff's Image(s) and/or derivative works thereof for the success of their business(s) and/or the promotion or marketing thereof.

237. That the use of each image by each defendant constitutes a separate and distinct infringement of Plaintiff's copyright. That, upon information and belief, defendants, or one or more of them, individually and/or collectively, have infringed no less than seventeen ("17") of plaintiff's copyright(s).

238. Upon information and belief, through the acts described hereinabove, defendants, or one or more of them, are liable for inducing the infringement(s) described herein.

239. Upon information and belief, defendant(s)' infringement(s) are and have been willful, intentional, purposeful, and with disregard of the rights of Plaintiff, and have caused substantial damage to Plaintiff.

240. As a direct and proximate result of defendant(s)' infringement(s), Plaintiff is entitled to the maximum statutory damages under 17 U.S.C. Section 504 (c), and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual damages and any additional profits of the defendants, or one or more of them, attributable to the infringement(s) as under 17 U.S.C. Sections 504 (a)-(b).

241. Pursuant to 17 U.S.C. Section 505, Plaintiff is entitled to his costs, including reasonable attorneys' fees.

<u>**FOURTH CLAIM FOR RELIEF**</u>
<u>Contributory Copyright Infringement</u>
<u>Under Section 501 of the Copyright Act</u>
<u>Against Defendants ROSS, MMG and SPIFF</u>

242. Upon information and belief, defendants, or one or more of them, have directly infringed Plaintiff's copyright(s) by, *inter alia* employing, printing, manufacturing, editing, cropping, broadcasting, disseminating, distributing, sublicensing, and/or enabling the copying or

appropriation of Plaintiff's Image(s) (or unauthorized derivative works thereof) as described more fully hereinabove, in violation of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. Sections 106 and 501.

243.   Upon information and belief, defendants, ROSS, MMG and SPIFF, or one or more of them, are liable as contributory infringer(s) for the copyright infringement(s) committed via: selecting, employing, broadcasting, printing, manufacturing, editing, cropping, sublicensing, distributing, and/or enabling the copying or appropriation of Plaintiff's Image(s); and that such use(s) were in violation of Plaintiff's copyrights.

244.   Upon information and belief, defendants, ROSS, MMG and SPIFF, or one or more of them, have directly and/or indirectly, willfully and/or negligently caused, enabled, encouraged, facilitated, and/or materially contributed to the infringement(s) by at least GUNPLAY, MEEK MILL, DJ SCREAM, DEF JAM, ISLAND DEF JAM, ATLANTIC, Facebook, Instagram, Twitter, YouTube, KidEight, DatPiff, SoundCloud, and various blogs and websites, or one or more of them, described hereinabove, by selecting, employing, broadcasting, printing, publishing, manufacturing, editing, cropping, sublicensing, distributing, disseminating and/or enabling the copying or appropriation of Plaintiff's Image(s), in violation of Plaintiff's copyrights.

245.   Upon information and belief, defendants, ROSS, MMG and SPIFF, or one or more of them, have in addition to the actions above, provided the tools (i.e. a print or electronic copy(ies) of Plaintiff's Image(s), and/or electronically displayed the Image(s) in a manner whereby they could be copied or appropriated), support, and/or instruction for the infringement(s), via the infringements described herein, in violation in Plaintiff's copyright(s).

246.   Upon information and belief, defendants, ROSS, MMG and SPIFF, or one or more of them, by *inter alia*, selecting, distributing, modifying, altering, cropping, editing, sublicensing, providing, and/or enabling the copying or appropriation of the Image(s) as specified hereinabove,

contributed to the infringement(s) by third parties and at least GUNPLAY, MEEK MILL, DJ SCREAM, DEF JAM, ISLAND DEF JAM, ATLANTIC, Facebook, Instagram, Twitter, YouTube, KidEight, DatPiff, SoundCloud, and various blogs and websites, or one or more of them.

247.  Upon information and belief, defendants, or one or more of them, knew or should have known that it/they was not authorized to use Plaintiff's Image(s).

248.  Upon information and belief, defendants, or one or more of them, had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public and/or business records, knew or should have known of Plaintiff's rights in the Image(s), and that any use of such Image(s) or of derivative works thereof would be in violation of Plaintiff's copyright(s).

249.  That the use of each image by each defendant constitutes a separate and distinct infringement of Plaintiff's copyright(s).  That, upon information and belief, defendants, or one or more of them, individually and/or collectively, have infringed no less than seventeen ("17") of plaintiff's copyright(s).

250.  Upon information and belief, through the conduct described hereinabove, defendants, ROSS, MMG and SPIFF, or one or more of them, are contributorily liable for the infringement(s) described herein.

251.  Upon information and belief, the aforementioned acts of the defendants, or one or more of them, constitutes federal statutory contributory copyright infringement under Section 501 of the Copyright Act in violation of the exclusive rights granted DJERRAHIAN as copyright holder.

252.  Upon information and belief, defendant(s)' infringement(s) are and have been willful, intentional, purposeful, and/or in disregard of the rights of Plaintiff, and have caused substantial damage to Plaintiff.

253.  As a direct and proximate result of defendant(s)' infringement(s), Plaintiff has been and will continue to be damaged in an amount as yet undetermined.  Indeed, the full nature and extent of defendant(s)' use(s) of Plaintiff's Images is as yet unknown, such information being within the sole custody, possession, and control of the defendants, or one or more of them.

254.  Plaintiff is entitled to the maximum statutory damages under 17 U.S.C. Section 504 (c), and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual damages and any additional profits of the defendants, or one or more of them, attributable to the infringement(s) as under 17 U.S.C. § 504 (a)-(b).

255.  Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the repeated and systematic, willful, intentional, malicious and bad faith nature of defendant(s)' copyright infringement(s).

## JURY DEMAND

256.  That Plaintiff requests a trial by jury of all issues.

**WHEREFORE**, Plaintiff demands judgment as against the defendant as follows:

**ON  THE FIRST CLAIM FOR RELIEF**-  (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of each of their infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement; and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON THE SECOND CLAIM FOR RELIEF**-  (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of each of their infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON THE THIRD CLAIM FOR RELIEF** - (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of each of their infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON THE FORTH CLAIM FOR RELIEF** - (A) Award to plaintiff his actual damages incurred as a result of defendant(s)' infringement(s), and all profits realized as a result of each of their infringement(s), in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each

separate and distinct act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendants, or one or more of them, including but not limited to wholly owned subsidiaries and/or affiliates, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted images, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

Prejudgment interest on all sums due;

And such other and further relief as this Court may deem just and proper inclusive of any and all relief or remedies allowable by the statutes referenced above or applicable hereinabove.

Dated: New York, New York
       May 6, 2014

Yours, etc.,

Edward Greenberg, Esq. (ECG 5553)
Tamara L. Lannin, Esq. (TL 3784)
EDWARD C. GREENBERG, LLC
570 Lexington Avenue, 19th Floor
New York, NY 10022
Tel: (212) 697-8777
Fax: (212) 697-2528
*Attorneys for Plaintiff*